UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VICTORIA MATTS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 2:25-cv-01421-CSK

ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

(ECF Nos. 15, 19)

Plaintiff Victoria Matts seeks judicial review of a final decision by Defendant Commissioner of Social Security denying an application for supplemental security income.[1] In the summary judgment motion, Plaintiff contends the final decision of the Commissioner contains legal error and is not supported by substantial evidence. Plaintiff seeks reversal of Defendant's final decision. The Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons below, Plaintiff's motion is DENIED, the Commissioner's cross-motion is GRANTED, and the final decision of the Commissioner is AFFIRMED.

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to

[1] This action was referred to the magistrate judge under Local Rule 302(c)(15) and proceeds on the consent of all parties. (ECF Nos. 6, 7, 8.)

"engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. §§ 404.900(a), 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. §§ 404.929, 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final

decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On April 29, 2022, Plaintiff applied for supplemental security income under Title XVI of the Social Security Act, alleging disability beginning on March 11, 2016. Administrative Transcript ("AT") 191 (ECF No. 10). Plaintiff claimed disability due to major depressive disorder, generalized anxiety disorder, and insomnia. *Id*. at 69. Plaintiff's application was denied initially and upon reconsideration; she sought review before an Administrative Law Judge ("ALJ"). AT 83-84, 108-111, 17. Plaintiff appeared with a representative at a video hearing on April 25, 2024 before an ALJ, where Plaintiff testified about her impairments and a vocational expert ("VE") testified about hypothetical available jobs in the national economy. AT 36-67.

On May 9, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT 14-29. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 29, 2022. AT 19. At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder and generalized anxiety disorder. *Id*. At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any listing. AT 19-20 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered listings 12.04 (Depressive, bipolar, and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), examining "Paragraph B" and "Paragraph C" criteria for Plaintiff's mental impairments.[2] AT 20.

The ALJ evaluated Plaintiff's hearing testimony; the lay testimony of Plaintiff's mother (Ms. Kelly Matts); the medical record, including mental health treatment and medication history; and consultative examinations. AT 20-23 (citing AT 240-250, 269-287, 40-62, 230-239, 261-268, 332-350, 351-387, 444-581 536-1109, 1132-1374, 1418-1465, 532-535, 1413-1437, 1512-1535). The ALJ also evaluated the medical opinions of Dr. Annette Brooks-Warren, M.D., who made Plaintiff's disability determination at the initial level on August 8, 2022 and opined Plaintiff had: (1) no limitation in understanding, remembering, or applying information; (2) no limitation in interacting with others; (3) no limitation in regard to concentrating, persisting, or maintaining pace; and (4) a mild limitation in adapting or managing oneself. *Id*. (citing AT 68-82). The ALJ also evaluated the opinion of Ms. Diane Dicker, Licensed Marriage and Family Therapist ("LMFT"), who

---

[2] "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

"Paragraph C" sets the criteria for "serious and persistent mental disorders," requiring a showing of medically documented history of the existence of the disorder for a period of at least two years. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.c.

had been Plaintiff's therapist since October 13, 2016, and responded to a mental impairment questionnaire on April 4, 2024. AT 1536-1542. Ms. Dicker found that Plaintiff had: (1) a fair ability to understand and remember very short and simple instructions and remember work-like procedures; (2) an extreme limitation in maintaining social functioning; (3) fair to no ability to concentrate, persist, or maintain pace; and (4) no ability to respond appropriately to changes in a routine work setting or deal with normal work stress. *Id*. (citing AT 1536-1542). Last, the ALJ evaluated the opinion of Dr. Coleman Cosgrove, M.D., who evaluated Plaintiff's disability determination at the reconsideration level on June 6, 2023. AT 85-93. Dr. Cosgrove found Plaintiff had moderate limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) managing oneself. *Id*. (citing AT 85-93). Ultimately, the ALJ concluded Dr. Cosgrove's opinion was persuasive and that Dr. Brooks-Warren and Ms. Dicker's opinions were unpersuasive. *Id*.

The ALJ concluded Plaintiff has a moderate limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation as for adapting or managing oneself. AT 20-23. Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "Paragraph B" criteria was not satisfied. AT 23. Further, the ALJ found that the "Paragraph C" criteria was not satisfied because there was "no evidence of minimal capacity to adapt to changes in the environment or demands that are not already part of [Plaintiff's] daily life." *Id*.

The ALJ next found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "[Plaintiff] can understand, remember, or apply simple instructions and perform simple tasks. [Plaintiff] can adapt to occasional simple changes. [Plaintiff] can tolerate occasional interaction with coworkers but no interaction with the general public."

*Id*. In making this finding, the ALJ considered Plaintiff's symptoms "to the extent which these symptoms can reasonably be accepted as consistent with the objective medical evidence," medical opinions, and prior administrative findings. *Id*.

Evaluating the medical opinions on Plaintiff's mental limitations, the ALJ found the opinion of Dr. Cosgrove's June 6, 2023 disability determination at the reconsideration level to be persuasive. AT 26. Dr. Cosgrove found Plaintiff can understand and remember only simple instructions and procedures and concentrate, persist, or maintain pace to perform only simple one-to-two step work tasks. *Id*. (citing AT 85-93). Additionally, Dr. Cosgrove found Plaintiff is capable of "appropriate social interactions," and can adapt to a low demand work setting consistent with simple work. *Id*. (citing AT 92). However, Dr. Cosgrove opined that these changes should be introduced "gradually" to Plaintiff. *Id*. (citing AT 92) The ALJ found this opinion to be persuasive because it was well-supported by the record, thanks to the opinion's citation of Plaintiff's "specialized mental health treatment with powerful medications." *Id*. The ALJ also found Dr. Cosgrove's opinion to be consistent with the record due to its variable mental status findings. *Id*.

The ALJ next found the opinion of Dr. Michelina Regazzi, PH.D., who performed consultative examinations on Plaintiff on July 9, 2022 and on May 25, 2023, to be unpersuasive. *Id*. (citing AT 532-535, 1413-1417). Dr. Regazzi found Plaintiff mildly impaired in her ability to deal with usual stresses encountered in a competitive work environment; however, she found Plaintiff otherwise unimpaired in her abilities: performing simple and repetitive and detailed and complex tasks; performing work activities on a consistent basis; reacting to changes in a work environment; reacting to work activities without special or additional supervision; accepting instructions from supervisors; interacting with coworkers and the public; and managing funds. *Id*.. The ALJ found this opinion unpersuasive because Dr. Regazzi's findings were not consistent with the evidence, citing Plaintiff's specialized treatment with anti-depressant and anti-anxiety medications, as well as her variable mental status findings. AT 26.

Last, the ALJ concluded that Ms. Dicker's April 24, 2024 questionnaire responses were unpersuasive. *Id*. (citing 1536-1542). Ms. Dicker found Plaintiff "has poor to no ability in the domains of mental functioning and will miss work more than three times a month due to impairments of treatment." *Id*. The ALJ found this opinion to be not fully supported by the record, citing treatment records documenting abnormal mood and variable concentration, but "more often than not, normal concentration, speech, and thought process." AT 26-27. Further, the ALJ found this opinion inconsistent with the record because the opinion has an "absence of a need for inpatient psychiatric treatment as would be expected with such extreme limitations Ms. Dicker opined." AT 27.

Based on the RFC, the ALJ determined at step four that Plaintiff does not have past relevant work. *Id*. However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including (i) sweeper cleaner, Dictionary of Occupational Titles ("DOT") #389.683-010, medium, SVP 2, with approximately 16,000 jobs nationally; (ii) linen room attendant, DOT #222.387-030, medium, SVP 2 with approximately 13,000 jobs nationally; and (iii) dry janitor-change house attendant, DOT #358.687-010, medium, SVP 2, with approximately 63,000 jobs in the national economy. AT 28.[3] Thus, the ALJ concluded Plaintiff is not disabled. AT 29.

On March 19, 2025, the Appeals Council denied Plaintiff's appeal. AT 1-6. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 15, 19.)

## III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by (1) failing to provide clear and convincing evidence for discounting the more severe aspects of Plaintiff's testimony regarding her mental illness; (2) failing to analyze the lay testimony of Ms. Kelly Matts, Plaintiff's

---

[3] "Medium" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. §§ 404.1567(c) and 416.967(c)

"SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." See DOT, App. C, § II, available at 1991 WL 688702.

mother; (3) failing to properly analyze the medical opinion testimonies of Dr. Cosgrove and Ms. Dicker; and (4) improperly evaluating medical opinion testimony at the ALJ's step three analysis. Pl. Mot. at 4-19 (ECF No. 11).

In contrast, Defendant argues (1) the ALJ properly evaluated Plaintiff's subjective symptom testimony; (2) the ALJ did not need to articulate how he considered Ms. Kelly Matts' nonmedical source statements under the revised regulations; (3) the ALJ properly evaluated the medical opinion testimonies of Dr. Cosgrove and Ms. Dicker; and (4) the ALJ reasonably found Plaintiff's mental impairments did not meet or medically equal the severity of a listed impairment at step three. Def. Mot. at 3-19 (ECF No. 19).

## IV. DISCUSSION

### A. Subjective Symptom Testimony

#### 1. Legal Standards

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g.*, Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *see also Lambert v. Saul,* 980 F.3d 1266, 1277-78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and

(3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

"Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds to be not credible and … explain what evidence undermines the testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Comm. of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). Boilerplate statements and general summaries of the evidence, without more, are not enough. *Id*. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Id*. at 1277. However, an ALJ's detailed overview of the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the minimal requirements for assessing credibility. *Lambert*, 980 F.3d at 1277-78.

2. <u>Analysis</u>

Plaintiff testified that she suffers from depression and anxiety of such severity that it causes difficulty remembering, concentrating, completing tasks, following instructions, getting along with others, handling stress or changes in routine, and caring for herself. AT 24 (citing AT 40-62, 218-226, 240-250, 281-289). The ALJ found that while Plaintiff's medically determinable impairments could be reasonably expected to cause her symptoms, Plaintiff's testimony regarding her symptoms was "not entirely consistent with the medical evidence and other evidence in the record" where she testified that her symptoms were more severe than what was reflected in the medical record. *See id*.

Plaintiff argues the ALJ erred by (1) weakly reasoning that Plaintiff's subjective symptom testimony is contradicted by the alleged onset date; (2) finding that Plaintiff's complaints were not entirely consistent with the nature of her treatment; (3) overstepping in his analysis by concluding that Plaintiff's complaints were not consistent with the mental status findings; and (4) failing to account for Plaintiff's anxiety and depression

when discounting Plaintiff's subjective symptom testimony based on daily activities. Pl. Mot. at 4-8. Defendant counters that the ALJ (1) reasonably determined Plaintiff's symptom allegations were not consistent with the medical evidence; (2) reviewed and interpreted medical evidence appropriately pursuant to regulations and Ninth Circuit caselaw; (3) reasonably considered that Plaintiff's response to treatment contradicted her allegations; and (4) appropriately discounted Plaintiff's testimony based on her daily activities. Def. Mot. at 4-8.

The Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony. The ALJ first summarized Plaintiff's mental health treatment and the medical record. *See* AT 24-25. The ALJ then provided specific reasons for the ALJ's conclusion that Plaintiff's "subjective complaints are not entirely consistent with the objective medical evidence or other evidence of record." *See* AT 25-26. The ALJ's analysis was specific, was not boilerplate, and included citation to the record. *See id*. at 24-26.

The ALJ first noted that "there is no evidence of any mental health treatment from the alleged onset date of March 11, 2016, through October 10, 2016, a period of approximately seven months." AT 24. Plaintiff sought treatment on October 11, 2016. AT 24. The ALJ concluded that there was no "acute psychiatric event" or worsening that corresponded with the March 2016 onset date. AT 25. Plaintiff does not dispute these facts, and instead notes that Plaintiff was 17 years old at the date of onset. *See* Pl. Mot. at 5.

Second, the ALJ found that Plaintiff's subjective complaints were not entirely consistent with the nature of her treatment. AT 25. The ALJ summarized Plaintiff's psychiatric treatment, noted Plaintiff was hospitalized in March 2017, and noted Plaintiff has not been hospitalized since April 2017. *Id*. at 25. Plaintiff argues that the ALJ is improperly requiring Plaintiff to have been more recently hospitalized for her subjective complaints to be found consistent with her treatment. *See* Pl. Mot. at 6. While the Court understands the basis for Plaintiff's argument, this argument takes the ALJ's analysis out

of context and ultimately is incorrect. Before providing this second reason, the ALJ described Plaintiff's condition when she first sought treatment in October 2016, her hospitalization in March 2017, and her subsequent treatment and examinations in July 2022 and May 2023, which showed generally normal functioning with "adequate attention, concentration, and memory." *See* AT 24-25. The ALJ is not, as Plaintiff argues, requiring a more recent hospitalization, but noting that the severity of the symptoms in Plaintiff's testimony is inconsistent with the record, which reflects an overall improvement in Plaintiff's mental health condition and regular treatment with both therapy and medication.

Third, the ALJ found Plaintiff's "subjective complaints [were] not entirely consistent with the mental status findings contained in the record." AT 25. The ALJ first acknowledged that treatment records have documented Plaintiff's "variable mood, affect, speech, psychomotor behavior, memory, and concentration. *Id*. (citing AT 332-387, 444-453, 536-1102, 1123-1374, 1418-1465, 1512-1535). The ALJ concluded, however, that Plaintiff's symptoms were not entirely consistent because Plaintiff "more often than not displayed intact memory and concentration" and consultative examinations confirmed Plaintiff's "cooperative behavior, adequate eye contact, normal speech, and adequate memory, attention, and concentration." *Id*.[4]

Fourth, the ALJ found that Plaintiff's complaints of limited daily activities, such as being unable to drive or use public transportation due to her impairments, to be not entirely consistent with the record. AT 26. Plaintiff testified that she has never attempted to drive or use public transit. *Id*. (citing AT 40-62). The ALJ also found treatment records documented that Plaintiff's mother imposed "significant restrictions on her activities," which the ALJ found to influence Plaintiff's behavior more than her medically determinable impairments. *Id*. The ALJ cited to records indicating Plaintiff's mother

[4] The ALJ also directly addressed an argument raised by Plaintiff—that Plaintiff had a normal mental status when she was psychiatrically hospitalized in March 2017—which the ALJ appropriately rejected as erroneous and against Plaintiff's interest. *See* AT 25.

would not allow Plaintiff to "go out on her own, walk the neighborhood, or go to the store by herself." *Id*. (citing AT 546, 552).

In summary, the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony where the ALJ identified specific testimony found to be inconsistent with the objective medical record, which included evidence that Plaintiff's condition improved with treatment over multiple years; Plaintiff "more often than not" had intact memory, concentration, and appropriate mood and thought processes; and that Plaintiff's limited daily activities were more influenced by restrictions imposed by Plaintiff's mother than by her impairments. AT 24-26; *see Cooks v. Astrue,* 2008 WL 5121942 (W.D. Ark. Dec. 5, 2008) (upholding an ALJ's findings that a plaintiff's "very restricted" daily activities were voluntarily limited rather than as a result of any functional restrictions due to his impairments). Def. Mot. at 4-7. Therefore, the Court denies Plaintiff summary judgment on this issue and grants Defendant summary judgment on this issue.

**B. Lay Opinion Testimony**

1. Legal Standards

The regulations require an ALJ to "consider" all evidence in the record. 20 C.F.R. § 404.1520c(d). Under the 2017 amendments to regulations, an ALJ is "not required to articulate how [they] considered evidence from nonmedical sources[.]" 20 C.F.R. § 404.1520c(d). "This suggests that an ALJ may consider a lay opinion . . . without explicitly discussing it or making any related findings in the written decision. That the Ninth Circuit has reached a similar conclusion, albeit in unpublished opinions, supports this argument." *Tiamiyu v. Comm'r of Soc. Sec.,* 2025 WL 2193021, *10 (E.D. Cal. Aug. 1, 2025) (citing *Kennedy v. O'Malley*, 2024 WL 242992, at *2 (9th Cir. 2024) (ALJ "not required to articulate how [she] considered evidence from nonmedical sources under the new regulations") (internal quotation marks omitted).

2. Analysis

Plaintiff alleges the ALJ erred in failing to analyze Plaintiff's mother's lay witness

statements. Pl. Mot. at 10-14. Conversely, Defendant argues that under the new regulations applicable to cases filed on or after March 27, 2017, the ALJ is not required to articulate reasons for discounting lay testimony. Def. Mot. at 8-13. Further, even if the Court were to conclude the ALJ erred, such error was harmless because Ms. Matts' testimony was "largely duplicative of Plaintiff's testimony." *Id*. at 16 (citing *Molina v. Astrue*, 674 F. 3d 1104, 1117-1122 (9th Cir. 2012), superseded by other grounds by regulation as stated in *Bowen v. Kijakazi*, 2022 WL 2610242, at *2 (9th Cir. July 8, 2022)).

In formulating the RFC, the ALJ stated he considered the statements made by Plaintiff's mother. AT 27. As the ALJ was not required to do more, Plaintiff has failed to show error on this basis. Therefore, the Court grants Defendant summary judgment on this issue and denies summary judgment for Plaintiff.

**C. Medical Opinion Testimony**

1. <u>Legal Standards</u>

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC" (residual functional capacity). *Rounds v. Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

The applicable rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant

objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." *Sam-Chankhiao v. Kijakazi*, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022) (citing *Hardy v. Commissioner*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021)).

2. Analysis

Plaintiff contests the ALJ erred in evaluating Ms. Dicker's medical opinion testimony because the ALJ (1) erred finding Ms. Dicker's opinion was inconsistent with the medical evidence; and (2) erred in "playing doctor" by issuing an "unqualified" and "arbitrary" interpretation of Ms. Dicker's medical opinion. Pl. Mot. at 16-17. In addition, Plaintiff argues the ALJ erred in evaluating Dr. Cosgrove's opinion because (1) the ALJ likewise erred in "playing doctor" while assessing Dr. Cosgrove's opinion; and (2) the ALJ insufficiently cited to the record while undergoing his supportability and consistency analysis. *Id*. at 17.

Conversely, Defendant argues that regarding Ms. Dicker's medical opinion testimony, the ALJ properly: (1) found Ms. Dicker's treatment notes did not support her opinion; and (2) determined that the remainder of the record did not support Ms. Dicker's opinion. Def. Mot. at 16-17. In addition, Defendant argues the ALJ properly assessed Dr. Cosgrove's opinion because: (1) the ALJ properly found Dr. Cosgrove's opinions were supported by his citations to Plaintiff's mental health treatment records; (2) the ALJ found

Dr. Cosgrove's findings were consistent with the evidence of record; and (3) the ALJ reasonably provided "brief references" to the evidence discussed in detail on previous pages of the opinion. *Id*. at 18-20. For both medical opinion testimonies, Defendant contests that Plaintiff's argument regarding the ALJ "playing doctor" lacks merit. *Id*. 19, 21.

First, Plaintiff's "playing doctor" arguments fail. The ALJ is empowered by regulations to assess the supportability and consistency with the administrative record of medical opinion testimony. *See* 20 C.F.R. § 416.920c(c)1-2. Further, the ALJ's findings are entitled to deference, and the Court may not second-guess an ALJ's reasonable determination. *See Smartt*, 53 F. 4th at 500. The Court also finds the ALJ properly analyzed Ms. Dicker's and Dr. Cosgrove's expert medical opinions using the supportability and consistency factors.

Second, the Court finds that the ALJ properly evaluated Ms. Dicker's medical opinion testimony. Ms. Dicker had opined Plaintiff had "poor to no ability in the domains on mental functioning and will miss work more than three months due to impairments or treatment." AT 26 (citing AT 1536-1542). The ALJ properly found Ms. Dicker's opinion was not supported based on Ms. Dicker's own treatment records, which documented Plaintiff's normal concentration, speech, and thought process. *See id*. at 26-27. The ALJ found Ms. Dicker's opinion to be inconsistent with the record where Ms. Dicker opined that Plaintiff had extreme limitations, but the treatment record did not reflect such extreme limitations, such as inpatient psychiatric treatment after April 2017. *See id*. at 27. Moreover, Ms. Dicker's own records did not reflect these extreme limitations. *See id*. at 26-27. The ALJ acted within the scope of the applicable regulations. *See* 20 C.F.R. § 416.920c(c)(2). Therefore, the Court grants Defendant summary judgment on this issue and denies Plaintiff summary judgment on this issue.

Third, the Court concludes the ALJ properly evaluated Dr. Cosgrove's opinion based on the supportability factors by referencing Plaintiff's specialized mental health treatment with her powerful medications, including Dr. Cosgrove's treatment notes. AT

26. Additionally, the ALJ found Dr. Cosgrove's opinion was consistent with the record because Dr. Cosgrove cited to variable findings of Plaintiff's mood, affect, eye contact, speech, psychomotor activity, and concentration. *Id*. And even though the ALJ does not include a specific citation to Plaintiff's variable findings in determining consistency, such findings are already well-documented in the record. *See* AT 332-387, 444-453, 536-1102, 1123-1374, 1418-1465, 1512-1535. The ALJ needs to only establish "a minimum level of articulation… to provide a sufficient rationale" in his reasoning. *Sam-Chankhiao*, 2022 WL 4226170, at *3 (quotation omitted). The Court concludes the ALJ properly evaluated Dr. Cosgrove's opinion.

Therefore, the Court grants summary judgment in favor of Defendant and denies summary judgment for Plaintiff on this issue.

**D. Step Three Analysis**

1. <u>Legal Standards</u>

At step three, the ALJ determines whether the claimant has an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. pt. 404, Subpart P, Appendix 1." *Ma v. Colvin*, 2014 WL 7184455, at *2 (N.D. Cal. Dec. 16, 2014). Plaintiff bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To equal a listed impairment, a plaintiff must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a plaintiff's impairment is not listed, then to the listed impairment "closely analogous" to the plaintiff's impairment. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1526. An ALJ is required to evaluate the relevant evidence before concluding that a plaintiff's impairments do not meet or equal a listed impairment, and a boilerplate finding is insufficient to support the conclusion that a plaintiff's impairment does not meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, an ALJ is not required, "as a matter of law," to articulate why a plaintiff

failed to satisfy each different section of the listing of impairments. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). When the "Court simply cannot determine from the ALJ's opinion how he came to the conclusion that [a plaintiff's] 'severe' impairments did not equal" the listing, the "ALJ's recitation of the evidence does not provide an adequate foundation for his findings" that the listing was not met. *Santiago v. Barnhart*, 278 F. Supp. 2d. 1049, 1058 (N.D. Cal. 2003).

To meet any listing of 12.04, 12.06, or 12.15, Plaintiff must satisfy the requirements of paragraphs A and B, or the requirements of paragraphs A and C. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A)(2). Paragraph A of each listing includes medical criteria that must be present in a plaintiff's medical evidence. *Id*. § 12.00(A)(2)(a). Paragraph B provides functional criteria to evaluate how mental health conditions limit Plaintiff's functioning, including "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." *Id*. § 12.00(A)(2)(b). To satisfy "Paragraph B," Plaintiff's mental health condition "must result in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas." *Id*.

"Paragraph C" provides criteria to evaluate serious and persistent mental disorders. *Id.* § 12.00(A)(2)(c). To satisfy "Paragraph C," a plaintiff's mental health condition must be "serious and persistent," i.e., "there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least [two] years, and evidence that shows [plaintiff's] disorder satisfies both C1 and C2." *Id.* § 12.00(G)(2)(a). C1 is satisfied if a plaintiff relies, "on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs" of a mental health condition. *Id.* § 12.00(G)(2)(b). C2 is satisfied if a plaintiff "ha[s] achieved only marginal adjustment," i.e., plaintiff's adaptation to the requirements of daily life is fragile, "despite [the plaintiff's] diminished symptoms and signs." *Id*. § 12.00(G)(2)(c).

/ / /

2. Analysis

In the ALJ's step three analysis evaluating Plaintiff's impairments, the ALJ evaluated Plaintiff's hearing testimony; the lay testimony of Plaintiff's mother (Ms. Matts); the medical record, including mental health treatment and medication history; consultative examinations; and the medical opinions of Dr. Cosgrove, Dr. Brooks-Warren, and Ms. Dicker. AT 20-23 (citing AT 240-250, 269-287, 40-62, 230-239, 261-268, 332-350, 351-387, 444-581 536-1109, 1132-1374, 1418-1465, 532-535, 1413-1437, 1512-1535, 68-82, 1536-1532, 85-93). Based on evaluating these different sources, the ALJ found Plaintiff has a moderate impairment in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation as for adapting or managing oneself. AT 20-23.

Plaintiff argues the ALJ erred by considering medical opinion testimony in his step three analysis. Pl. Mot. at 14. Plaintiff argues the relevant regulations do not give the ALJ the ability to evaluate medical opinion testimony and that he is limited to analyzing "medical facts," rather than the "*persuasiveness*, or the opinions of non-agency doctors." *Id*. at 18. Defendant argues that the ALJ properly found Plaintiff's mental impairments did not meet or medically equal the severity of a listed impairment. Def. Mot. at 18. Defendant further argues that Plaintiff failed to show in its motion that the ALJ committed reversible error where Plaintiff's argument is limited to challenging how the ALJ conducted his analysis but does not argue or prove that Plaintiff met any listing. *Id.*

The Court concludes that that the ALJ evaluated the relevant evidence and reasonably found that Plaintiff did not meet the criteria of listings 12.04 or 12.06, and that Plaintiff's arguments fail to show the ALJ committed reversible error. The ALJ analyzed each of the four sections of Paragraph B criteria separately by evaluating the relevant evidence, and though not required to, the ALJ articulated why Plaintiff failed to satisfy each of the four sections. *See Gonzalez v. Sullivan*, 914 F.2d at 1201. Though Plaintiff limits her challenge to the ALJ's evaluation of medical opinions and ignores the ALJ's

evaluation of other evidence, the ALJ also considered and analyzed Plaintiff's hearing testimony, Plaintiff's mother's testimony, the medical record, and consultative examinations. *See* AT 20-23. As a result, even were the Court to assume that the ALJ should not have considered medical opinions at step three, Plaintiff fails to show the error was not harmless—that without considering the medical opinions, Plaintiff met the requirements of a listing. *See Ludwig*, 681 F.3d at 1054 (harmless error rule applies to Social Security disability cases). In her reply, Plaintiff herself cites to medical opinion evidence from Ms. Dicker to support Plaintiff's step three analysis, undermining her argument that medical opinion evidence cannot be considered at step three and confirming that any error in considering medical opinion evidence was harmless. *See* Pl. Reply at 17. Plaintiff's attempt to technically distinguish between considering "findings" in the medical opinion at step three, which Plaintiff asserts in her reply is appropriate, versus considering "persuasiveness" of a medical opinion, which Plaintiff argues is improper, fails. *See id*. In addition, Plaintiff does not cite legal authority for her argument that medical opinions cannot be considered at step three pursuant to 20 C.F.R. § 416.920a, *see* Pl. Mot. at 14-15, 18-19, and the Court was not able to find such authority.

Ultimately, Plaintiff has not met her burden to prove that she has an impairment that meets or equals the criteria of a listing. *See Ludwig*, 681 F.3d at 1054; *Burch*, 400 F.3d at 683. Defendant is correct that "Plaintiff does not argue [in her motion] that she met any listing and does not present any evidence in support of such a finding." Def. Mot. at 18 (citing Pl. Mot. at 18-19). In her reply, Plaintiff responds that Ms. Dicker's medical opinion findings show that Paragraph A criteria exist at a level of severity that supports a listing disposition. Pl. Reply at 17. Even apart from the impropriety of raising a new argument in a summary judgment reply on an issue where the plaintiff bears the burden of proof, *see Harrison v. Colvin*, 2013 WL 1326058, at *5 n.4 (E.D. Cal. Mar. 29, 2013) ("A moving party's attempt to introduce new facts or different legal arguments in reply papers is improper." (citation omitted)), this is insufficient because, as described

above, Plaintiff fails to show that any error was not harmless.

Therefore, the Court grants Defendant summary judgment on this issue and denies Plaintiff summary judgment on this issue.

## V. CONCLUSION

Having addressed all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## ORDER

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;
2. The Commissioner's cross-motion (ECF No. 19) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

Dated: July 16, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

7, matt.1421.25